```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
SYNERGETICS USA, INC.,                  :
                   Plaintiff,           :
                                        :
              -v-                       :   08 CIV. 3669 (DLC)
                                        :
ALCON LABORATORIES, INC. and ALCON,     :   OPINION & ORDER
INC.,                                   :
                                        :
                   Defendants.          :
----------------------------------------X
```

Appearances:

For Plaintiff:
Andrea Bierstein
Paul J. Hanly, Jr.
Hanly, Conroy, Bierstein, Sheridan, Fisher & Hayes LLP
112 Madison Ave., 7th Floor
New York, NY 10016

Derek Y. Brandt
Emily J. Kirk
SimmonsCooper LLC
707 Berkshire Blvd.
East Alton, IL 62024

For Defendants:

J. Gordon Cooney, Jr.
Morgan, Lewis & Bockius
1701 Market St.
Philadelphia, PA 19103

Harry T. Robins
Morgan, Lewis & Bockius
101 Park Ave.
New York, NY 10178

DENISE COTE, District Judge:

Plaintiff Synergetics USA, Inc. ("Synergetics"), a Delaware corporation that designs, manufactures, and markets products for

surgical procedures, brings this antitrust action against defendants Alcon Laboratories, Inc. and Alcon, Inc. (collectively, "Alcon") for tying products in violation of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 & 2, and Section 3 of the Clayton Act, 15 U.S.C. § 14, and engaging in predatory pricing in violation of 15 U.S.C. § 13a.  Alcon now moves for judgment on the pleadings under Rules 12(b)(1) and 12(b)(6), Fed.R.Civ.P.  For the reasons discussed below, the motion is granted.

BACKGROUND

The following facts are drawn from the amended complaint and assumed to be true for the purposes of deciding the motion to dismiss.  Alcon makes instruments and accessories used in vitreoretinal surgery, a type of eye surgery in which the surgeon removes the vitreous (the gel-like substance in the eye) and operates on the inside of the eye.  Approximately 85% of American vitreoretinal surgeons use Alcon's vitrectomy machine (or "VIT machine"), known as the Accurus.  This expensive machine, which has a retail price of about $75,000, requires a disposable cassette that is inserted into the Accurus to collect vitreous material.  Alcon makes and has patented the only cassettes that can be used with the Accurus.

Alcon and Synergetics compete in providing light sources and delivery systems for this surgery. Both companies make a stand-alone light source to illuminate the inside of the eye during surgery, and light pipes used to deliver light from the light source into the eye. Each company's light pipes work only with the light source sold by that same company.

Alcon sells its instruments and accessories in three separate packages. It sells an AccuPak, "which consists of either just a cassette with tubing or a cassette with tubing plus a surgical probe." It also sells a Total Plus pack, which is a "prepackaged . . . single-vitreoretinal surgery kit[]." The Total Plus pack sells for $400 and "includes an Alcon light pipe whether the doctor or hospital wants one or not." A Total Plus pack "without an Alcon light pipe can be obtained from Alcon, if at all, only at a price equal to or greater than the price of the Total Plus pack containing the light pipe." A Custom-Pak "consists of the standard Total Plus kit and additional items selected by the doctor or hospital." The Custom-Pak may be customized for the doctor or hospital, but the Total Plus portion of the Custom-Pak may not be customized.

Synergetics claims that Alcon ties the sale of its cassettes to the sale of its light pipes and thereby locks

doctors into buying Alcon's light sources as well.[1]  Synergetics makes four different allegations to support this claim.  First, while the amended complaint acknowledges that Alcon manufactures and sells its cassette without any light pipe, in an AccuPak, it propounds a failure-to-market theory.  It asserts that Alcon has "not marketed" this product to vitreoretinal surgeons and "tries to conceal their very existence from purchasers of vitreoretinal surgical instruments."

Second, Synergetics alleges that Alcon has refused to sell its Total Plus pack without a light pipe: "Vitreoretinal surgeons who have asked for a Total Plus without the Alcon light pipe have been told . . . that the Total Plus is not available without the light pipe."  Third, Synergetics also alleges, more broadly, that Alcon has "outright deni[ed the] separate availability of the disposable cassette and the light pipe" and has "refus[ed] entirely . . . to sell its disposable cassette to vitreoretinal product purchasers unless the purchase also includes a certain amount of Alcon instruments and accessories, including . . . the Alcon light pipe."

---

[1] Synergetics asserts that there are at least two distinct types of eye surgeons: Doctors who perform operations on the front of the eye, such as cataracts, constitute one type of eye surgeon; vitreoretinal surgeons, who perform surgery on the back of the eye, constitute a separate type.  The former do not need the specialized light sources and light pipes at issue here for their procedures; the latter do.

Fourth, Synergetics claims Alcon has coerced customers to purchase Alcon light pipes and cassettes together by using a pricing scheme that makes purchasing these products together the only economically viable option.  Alcon has allegedly "priced its cassette when purchased without a light pipe substantially higher than the price charged when the cassette is bundled with the light pipe."

In a similar vein, Synergetics claims that Alcon has engaged in predatory pricing of its light sources and light pipes.  Synergetics asserts that Alcon sells its light sources for "free" or at "unreasonably low prices" and its light pipes for "free or at negative cost."  By providing these products below cost, Alcon threatens to drive Synergetics out of the market.  If it succeeds, Alcon will be able to charge monopoly prices for these products.

Synergetics filed this action on April 16, 2008.  In its original complaint, Synergetics asserted that the Accurus cassette and light pipe could only be purchased together.  As shown above, that allegation was omitted from its amended complaint filed on August 22.  On October 14, Alcon moved to dismiss the amended complaint.  In its opposition brief, Synergetics abandons its failure-to-market theory.  On November 13, Synergetics moved to strike evidence Alcon had submitted with its motion to dismiss for the purpose of demonstrating that

5

Alcon had sold many AccuPaks in the United States in the years prior to the filing of Synergetics's amended complaint.

DISCUSSION

A trial court considering a Rule 12(b)(6) motion must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party."  McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007).  At the same time, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss."  Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 337 (2d Cir. 2006) (citation omitted).

Under the pleading standard set forth in Rule 8(a)(2), complaints must include a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "[A] plaintiff is required only to give a defendant fair notice of what the claim is and the grounds upon which it rests."  Leibowitz v. Cornell Univ., 445 F.3d 586, 591 (2d Cir. 2006).  Rule 8 is fashioned in the interest of fair and reasonable notice, not technicality, and therefore is "not meant to impose a great burden upon a plaintiff."  Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 347 (2005).

A court considering a Rule 12(b)(6) motion applies a "flexible plausibility standard, which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Boykin v. KeyCorp, 521 F.3d 202, 213 (2d Cir. 2008) (citation omitted). "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level." ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

Synergetics's amended complaint includes eleven causes of action. In their briefs, both Alcon and Synergetics address these claims in three groups: tying (Counts 1-7), predatory pricing (Counts 8-9), and state law claims (Counts 10-11). This Opinion proceeds in the same fashion.

A. Tying

The Second Circuit has defined a tying arrangement as "an agreement by a party to sell one product but only on the condition that the buyer also purchase a different (or tied) product." E & L Consulting, Ltd. v. Doman Indus., 472 F.3d 23, 31 (2d Cir. 2006) (citation omitted). The Second Circuit requires plaintiffs alleging an illegal tying arrangement to show:

> first, a tying and a tied product; second, evidence
> of actual coercion by the seller that forced the
> buyer to accept the tied product; third, sufficient
> economic power in the tying product market to coerce
> purchaser acceptance of the tied product; fourth,
> anticompetitive effects in the tied market; and
> fifth, the involvement of a 'not insubstantial'
> amount of interstate commerce in the 'tied' market.

Id. (citation omitted).  Plaintiffs must plead tying claims with some specificity:

> Even under notice pleading, an antitrust defendant
> charged with illegal tying is entitled to some
> specificity as to the conduct alleged to be coercive,
> the customers who would have purchased a product
> elsewhere but for the coercion, the particular
> products sold as a result of the coercion, the
> anticompetitive effects in a specified market, and
> the effect on the business of the plaintiff.

Id. at 32.[2]

With respect to the second element of a tying claim, the Second Circuit requires proof of coercion.  Unijax, Inc. v. Champion Int'l, Inc., 683 F.2d 678, 685 (2d Cir. 1982). Cajolery, even "to the point of obnoxiousness," is insufficient. Id.  The Supreme Court has said that "where the buyer is free to

---

[2] Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955 (2007), and its Second Circuit progeny reinforce this demand for specificity in a tying claim.  E.g., Ross v. Bank of Am., N.A., 524 F.3d 217, 225 (2d Cir. 2008) ("We recognize that Bell Atlantic Corp. v. Twombly requires a heightened pleading standard in those contexts where factual amplification is needed to render a claim plausible, including, most notably, the antitrust context.") (citation omitted); Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007) ("[W]e believe the [Twombly] Court . . . require[es] a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible.")

take either product by itself there is no tying problem even though the seller may also offer the two items as a unit at a single price." Northern Pac. Ry. Co. v. United States, 356 U.S. 1, 6 n.4 (1958).  If, however, the individual products are priced such that the buyer is coerced to accept both products in a discounted package, then a tying arrangement may result.  Am. Mfrs. Mut. Ins. Co. v. Am. Broadcasting-Paramount Theatres, Inc., 388 F.2d 272, 283 (2d Cir. 1967).

Alcon claims that Synergetics failed to plead the second element of a tying claim, actual coercion of the buyer.  Alcon is correct; none of Synergetics's theories allege actual coercion.

Synergetics's allegations that Alcon refused to sell its Total Plus package without a light pipe fails to allege coercion.  This allegation merely claims that Alcon will not modify one of its three packages of products to exclude the light pipes.  Synergetics acknowledges that Alcon sells cassettes without light pipes in their AccuPaks.

Synergetics's general allegations that Alcon has refused to sell cassettes without light pipes to vitreoretinal surgeons does not satisfy the pleading requirements for a tying claim.  Synergetics fails to identify a single customer who has tried to purchase the AccuPak and been refused or a single customer who would have purchased a light pipe elsewhere but for Alcon's

9

putative coercion.  Where the pleading recognizes that the defendant also sells the allegedly tied items separately, general claims that Alcon has refused to sell two supposedly tied products individually do not allege actual coercion of the buyer.

Finally, Synergetics's allegations that Alcon has employed a pricing scheme that coerces customers to buy both products together fall short of Rule 8's pleading requirements. Synergetics alleges that the Total Plus package (which contains the defendants' cassette, light pipe, and other items) costs $400, and the defendants' light pipe alone costs $70. Synergetics does not, however, provide a price for the AccuPak, which contains a cassette and no light pipe.  Without price information for the AccuPak, Synergetics's pleading does not plausibly suggest the validity of its claim that it is prohibitively expensive to buy the cassette and light pipe separately.  The motion to dismiss the tying claims is therefore granted.

B. Predatory Pricing

The Supreme Court has defined predatory pricing as a means by which a "single firm, having a dominant share of the relevant market, cuts its prices in order to force competitors out of the market, or perhaps to deter potential entrants from coming in."

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 584 n.8 (1986).  "To succeed on a predatory pricing claim, a plaintiff must prove two elements: (1) that the prices complained of are below an appropriate measure of its rival's costs, and (2) that the predatory rival has a dangerous probability of recouping its investment through a below cost pricing scheme."  Virgin Atl. Airways Ltd. v. British Airways Plc, 257 F.3d 256, 266 (2d Cir. 2001) (citation omitted).

Alcon argues that Synergetics has failed to plead facts that would show Alcon's pricing was below an appropriate measure of its costs.  Synergetics's assertion that Alcon sells its light sources for "free" or "unreasonably low prices" and that Alcon sells its light pipes for "free or at negative cost," are conclusory statements inadequate to support a claim of predatory pricing.  These claims rely on the assertion that a Total Plus pack that is altered to exclude the light pipe costs the same or more than a regular Total Plus pack that includes a light pipe.  These claims ignore the fact that the components are available separately.  Indeed, elsewhere in its pleadings, Synergetics claims that the defendants' light pipes retail for approximately $70.  Nowhere, however, does Synergetics allege that this price falls below an appropriate measure of Alcon's costs.

Furthermore, Alcon argues that Synergetics's amended complaint is silent on the second prong of the above test.

Synergetics claims that Alcon threatens to drive Synergetics out of the markets for light sources and light pipes; and that doing so would allow Alcon to recoup its investment in below-cost prices by charging monopoly prices for these two products. Such an allegation is merely a generic statement of an element of the claim, though. Synergetics fails to assert facts to show that it could satisfy the second element of its predatory pricing claim. The predatory pricing claims must be dismissed.

C. State Law Claims

Synergetics does not dispute that if the federal claims are dismissed then the state law claims must also be dismissed. Since Synergetics's federal claims have been dismissed, its state claims are also dismissed.

CONCLUSION

Alcon's October 14 motion to dismiss Synergetics's amended complaint is granted. It is, therefore, unnecessary to reach Synergetics's November 13 motion to strike and it is denied as moot.

SO ORDERED:

Dated:   New York, New York
         February 23, 2009

                                            /s/ Denise Cote
                                        _____
                                            DENISE COTE
                                        United States District Judge