```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
SYNERGETICS USA, INC.,                  :
                        Plaintiff,      :
                                        :
            -v-                         :     08 CIV. 3669 (DLC)
                                        :
ALCON LABORATORIES, INC. and ALCON,     :     OPINION & ORDER
INC.,                                   :
                                        :
                        Defendants.     :
----------------------------------------X
```

Appearances:

For Plaintiff:
Andrea Bierstein
Paul J. Hanly, Jr.
Hanly, Conroy, Bierstein, Sheridan, Fisher & Hayes LLP
112 Madison Ave., 7th Floor
New York, NY 10016

Derek Y. Brandt
Emily J. Kirk
SimmonsCooper LLC
707 Berkshire Blvd.
East Alton, IL 62024

For Defendants:
J. Gordon Cooney, Jr.
Morgan, Lewis & Bockius
1701 Market St.
Philadelphia, PA 19103

Harry T. Robins
Morgan, Lewis & Bockius
101 Park Ave.
New York, NY 10178

DENISE COTE, District Judge:

    Defendants Alcon Laboratories, Inc. and Alcon, Inc.

(collectively, "Alcon") move to dismiss plaintiff Synergetics

USA, Inc.'s ("Synergetics") second amended complaint ("SAC") under Rule 12(b)(6), Fed.R.Civ.P.  For the following reasons, the motion is granted in part.

BACKGROUND

Much of the relevant background is provided in this Court's Opinion and Order of February 23, 2009, Synergetics USA, Inc. v. Alcon Laboratories, Inc., 2009 WL 435299 (S.D.N.Y. Feb. 23, 2009) ("February Opinion"), familiarity with which is assumed.  Only the facts necessary to a resolution of the pending motion are described here.

Both Synergetics and Alcon make instruments and accessories used in vitreoretinal surgery, which is surgery on the inside of the eye.  Alcon makes a vitrectomy machine used in this surgery that requires a new Alcon disposable cassette to be inserted for each operation.  Alcon supplies 85% of the vitrectomy machines used by American vitreoretinal surgeons.  Alcon and Synergetics compete in providing light sources and light pipes that deliver the light to the inside of the eye for vitreoretinal surgery. Alcon sells its instruments and accessories alone and in packages. Its packages include: a Total Plus pack, which contains all instruments and accessories a surgeon needs for vitreoretinal surgery, including a cassette and a light pipe; an AccuPak, which contains either primarily a cassette or a

cassette plus a surgical probe; and a "Small Parts" Kit, which includes accessories for surgery but neither a cassette nor light pipe.

Synergetics claims that Alcon has tied the sale of its cassettes to the sale of its light pipes in two ways.  First, Synergetics alleges that Alcon has refused to sell its cassettes without its light pipes.  Synergetics identifies two customers who were allegedly told by Alcon that they could not purchase a cassette without a light pipe.  Synergetics also identifies over thirty customers whom Alcon allegedly told "could not buy a vitreoretinal surgical pack without a light pipe in some or all of the gauges needed for vitreoretinal surgery."

Second, Synergetics claims that Alcon ties cassettes and light pipes together by using a pricing scheme that makes purchasing them together the only economically viable option. Synergetics alleges that Alcon's Total Plus pack costs $500, its light pipe costs $112, an AccuPak that includes a vitrectomy probe costs $400, an Alcon "Small Parts" Kit costs $110, and a Synergetics light pipe costs $73.  Synergetics does not plead a price for the cassette-only AccuPak.

Synergetics also alleges that Alcon engaged in predatory pricing of both its light source (named the "Xenon") and its light pipes.  The SAC alleges that Alcon sells its light pipes below cost, based on the assertion that an AccuPak and "Small

3

Parts" Kit together cost more than a Total Plus pack, which includes all of the components of the AccuPak and "Small Parts" Kit plus a light pipe.  Synergetics also names ten customers to whom Alcon has given the Xenon for free.  By increasing the price of other products, according to Synergetics, Alcon is able to recoup losses it would otherwise suffer from giving away the Xenon.  Synergetics alleges that sales of its own light source (named the "Photon") have declined since 2006 because of Alcon's strategy,[1] and that if Alcon succeeds in driving Synergetics out of the stand-alone light source market, it will be free to charge monopoly prices.

   Synergetics filed this action on April 16, 2008, and filed its first amended complaint ("FAC") on August 22.  Alcon's October 14 motion to dismiss the FAC was granted in the February Opinion.  On March 27, 2009, Alcon filed this motion, which became fully submitted on May 1.

DISCUSSION

   "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'"  Ashcroft v. Iqbal,

---

[1] Synergetics also alleges that sales of its light source declined for a separate reason.  Synergetics alleges that by forcing surgery practices to buy light pipes along with cassettes, Alcon has ultimately forced vitreoretinal surgeons to use the Alcon light source.

4

129 S. Ct. 1937, 1949 (2009) (citation omitted).  This rule "does not require 'detailed factual allegations,'" id. (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)), but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  Id. (quoting Twombly, 550 U.S. at 555); see also Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 337 (2d Cir. 2006).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 555 U.S. at 557).

A court considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." Vietnam Ass'n for Victims of Agent Orange v. Dow Chemical Co., 517 F.3d 104 (2d Cir. 2008) (citation omitted).  To survive such a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 555 U.S. at 570).  This "plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (citation omitted).

The Supreme Court in Iqbal summarized the "[t]wo working principles that underlie" Twombly: "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id.  "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 1950.  Applying this second principle "will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.  Thus, the Supreme Court set out a "two-pronged" approach for courts deciding a motion to dismiss:

> [A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. . . .  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id.

A. Tying

Synergetics claims that Alcon ties the sale of its cassettes to the sale of its light pipes.  The elements of a tying claim were outlined in the February Opinion.  Synergetics, 2009 WL 435299, at *3.  Synergetics has failed to state a tying claim based on a price coercion theory for substantially the same reasons as were discussed in the February Opinion --

6

namely, because it fails to plead the price of a cassette-only AccuPak. Id. at *4.

Similarly, Synergetics's allegations that customers were told they could not buy Alcon's vitreoretinal surgical pack without a light pipe, that is, an AccuPak, "in some or all of the gauges needed for vitreoretinal surgery" does not adequately allege coercion. This claim does not relate to cassette-only AccuPacks; cassettes do not come in gauges. This allegation is in essence a claim that when the cassette was packaged with a surgical probe, it did not always contain the specific gauged probes the customers wanted. Since it is the cassette that is the tying product, allegations about the probes are irrelevant.

Synergetics has cured the deficiency in its refusal-to-sell theory insofar as it asserts that Alcon refused to sell cassettes without light pipes to two customers. See Hack v. President and Fellows of Yale College, 237 F.3d 81, 85 (2d Cir. 2000) ("The essential characteristic of an invalid tying arrangement lies in the seller's exploitation of its control over the tying product to force the buyer into the purchase of a tied product that the buyer either did not want at all, or might have preferred to purchase elsewhere on different terms.") Alcon argues that Synergetics has nonetheless failed to allege tying since it has not sufficiently pleaded that the alleged

7

tying activity will have an impact on a substantial amount of interstate commerce.

To prevail on a tying claim, a plaintiff must prove "a substantial volume of commerce is foreclosed thereby." Jefferson Parish Hosp. Dist. No. 2 v. Hyde, 466 U.S. 2, 16 (1984); accord Gonzalez v. St. Margaret's House Housing Dev. Fund Corp., 880 F.2d 1514 (2d Cir. 1989).  The volume of commerce must be "substantial enough in terms of dollar-volume so as not to be merely de minimis."  Fortner Enters., Inc. v. U.S. Steel Corp., 394 U.S. 495, 501 (1969).

At the pleading stage, however, a plaintiff need not specify a dollar amount of foreclosed commerce to plead a plausible claim of tying.  By alleging that Alcon has refused to sell cassettes without light pipes to two health care institutions, Synergetics has given fair notice of its claim and identified a plausible theory of impact on a substantial volume of commerce.[2]  Synergetics may be able to prove foreclosure of a substantial volume of commerce if in discovery it uncovers sufficient evidence of a practice to refuse to sell cassettes unless customers purchased light pipes.  Alcon's motion to dismiss Synergetics's tying claim is therefore denied.

---

[2] While Alcon asserts that one of the two institutions has made many purchases of AccuPaks without light pipes, such information may not be properly considered on this motion to dismiss.

B. Predatory Pricing

Synergetics claims that Alcon has engaged in predatory pricing of its light sources and light pipes. The February Opinion outlined the elements of a predatory pricing claim. Id. at *4. Synergetics's predatory pricing claim in relation to Alcon's light pipes fails for substantially the same reasons as were discussed in the February Opinion. Id. Its claim that Alcon sells its light pipes for $0 or less relies on the assertion that it is less expensive to buy the Total Plus pack than it is to buy components of that pack separately. At the same time, Synergetics alleges a price for a stand-alone Alcon light pipe -- $113 -- but does not allege that this price is below an appropriate measure of Alcon's costs.

Synergetics also fails to allege a predatory pricing claim with respect to Alcon's stand-alone light source. Synergetics has made only conclusory assertions that Alcon will be able to recoup its investment through later monopoly profits.

At trial, a plaintiff must show that the defendant has "a reasonable expectation of recovering, in the form of later monopoly profits, more than the losses suffered." Brooke Group Ltd. v. Brown & Williamson Tobacco Corp., 509 U.S. 209, 224 (1993) (citation omitted). These monopoly profits must come in the same product market in which a defendant is alleged to have

engaged in predatory pricing.  See id. at 231-32.  A plaintiff must therefore prove that the relevant market is susceptible to sustained monopoly pricing after its exit.  Id. at 225-26; see also Tops Markets, Inc. v. Quality Markets, Inc., 142 F.3d 90, 100 (2d Cir. 1998) ("In considering the likelihood of achieving monopoly power, we employ [a] concept of market power . . . which considers the defendant's relevant market share in light of other market characteristics, including barriers to entry.")

Synergetics's allegation that Alcon currently recoups some of its investment through marking up other products in separate markets does not suggest a plausible theory by which Alcon will be able to recover its investment in later monopoly profits from sales of the light sources themselves.  While Synergetics alleges facts related to Alcon's relative market power in other product markets,[3] Synergetics makes no allegations about Alcon's power or dominance in the market for stand-alone light sources or its likelihood of achieving market power for that product. Synergetics's own pleading belies the argument that the light source market lends itself to a sustained monopoly: Synergetics alleges that Alcon did not offer a light source in March 2004 when Synergetics introduced its light source to the market, but Alcon went into a "crash engineering project" and was able to

---

[3] Synergetics alleges that Alcon controls 85% of the market for vitrectomy machines and has monopoly power in the market for cassettes.

...

release its competing light source in the second quarter of 2005. Alcon's motion to dismiss Synergetics's predatory pricing claim is therefore granted.

C. State Law Claims

Alcon does not argue that Synergetics's state law claims should be dismissed if a federal claim remains. Since Synergetics still has a federal claim, its state law claims are not dismissed.

CONCLUSION

Alcon's March 27 motion to dismiss Synergetics's SAC is denied with respect to Synergetics's tying claim and state law claims, and is granted with respect to Synergetics's predatory pricing claim.

SO ORDERED:

Dated:   New York, New York
         June 4, 2009

_____
         DENISE COTE
United States District Judge