```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
SYNERGETICS USA, INC.,                  :
                      Plaintiff,        :
                                        :
              -v-                       :   08 CIV. 3669 (DLC)
                                        :
ALCON LABORATORIES, INC. and ALCON,     :   OPINION & ORDER
INC.,                                   :
                                        :
                      Defendants.       :
----------------------------------------X
```

Appearances:

For Plaintiff:
Andrea Bierstein
Paul J. Hanly, Jr.
Hanly, Conroy, Bierstein, Sheridan, Fisher & Hayes LLP
112 Madison Ave., 7th Floor
New York, NY 10016

Derek Y. Brandt
Emily J. Kirk
SimmonsCooper LLC
707 Berkshire Blvd.
East Alton, IL 62024

For Defendants:
J. Gordon Cooney, Jr.
Morgan, Lewis & Bockius
1701 Market St.
Philadelphia, PA 19103

Harry T. Robins
Morgan, Lewis & Bockius
101 Park Ave.
New York, NY 10178

DENISE COTE, District Judge:

An Opinion and Order dated June 4, 2009 dismissed plaintiff Synergetics USA, Inc.'s ("Synergetics") price coercion prong of

its tying claim against defendants Alcon Laboratories, Inc. and Alcon, Inc. (collectively, "Alcon").  Synergetics USA, Inc. v. Alcon Laboratories, Inc., No. 08 Civ. 3669 (DLC), 2009 WL 1564113 (S.D.N.Y. June 4, 2009) ("June Opinion").  Synergetics now moves for reconsideration of that dismissal.  For the following reasons, Synergetics's motion is denied.

BACKGROUND

Much of the relevant background is provided in the Opinion of February 23, 2009, Synergetics USA, Inc. v. Alcon Laboratories, Inc., No. 08 Civ. 3669 (DLC), 2009 WL 435299 (S.D.N.Y. Feb. 23, 2009) ("February Opinion"), and the June Opinion, familiarity with which is assumed.  Only the facts necessary to a resolution of the pending motion are described here.

Both Synergetics and Alcon make instruments and accessories used in vitreoretinal surgery, which is surgery on the inside of the eye.  Alcon supplies 85% of the vitrectomy machines used by American vitreoretinal surgeons, and these machines require a new Alcon disposable cassette to be inserted for each operation. Alcon and Synergetics compete in providing, inter alia, light pipes that deliver the light to the inside of the eye for vitreoretinal surgery.  Alcon sells its instruments and accessories alone and in packages.  Its packages include: a

Total Plus pack, which contains all instruments and accessories a surgeon needs for vitreoretinal surgery, including a cassette and a light pipe; an AccuPak, which always contains a cassette and tubing, and certain versions of which contain additional items; and a "small parts" kit, which includes accessories for surgery but neither a cassette nor light pipe.

Synergetics claims that Alcon has tied the sale of its cassettes (the tying product) to the sale of its light pipes (the tied product) in two ways.  First, Synergetics alleges its refusal-to-sell theory: Alcon has refused to sell its cassettes without its light pipes.  Second, Synergetics alleges its price coercion theory: Alcon ties cassettes and light pipes together by using a pricing scheme that makes purchasing them together the only economically viable option.

In its first amended complaint ("FAC"), Synergetics alleged that the cassette is available in an AccuPak that also includes tubing, and in another version of an AccuPak that includes both tubing and a probe.  Synergetics alleged that Alcon "priced its cassette when purchased without a light pipe substantially higher than the price charged when the cassette is bundled with the light pipe."  In support of this claim, Synergetics pleaded the price of Alcon's light pipe and of Alcon's Total Plus pack, but did not plead the price of an AccuPak.  The briefing related to Alcon's motion to dismiss the FAC did not distinguish between

3

the two versions of AccuPaks, focusing instead on the plaintiff's failure to plead any price for an AccuPak.  Both parties referred generally to the AccuPak as Alcon's only type of package that included a cassette but not a light pipe.  See Alcon Mot. to Dismiss FAC Mem. 4, 6 & 18 ("five different models of the AccuPak®, all of which include the cassette and none of which include an Alcon light pipe") (quotation repeated on each page); id. at 6 ("Alcon also offers the AccuPak®, which includes the cassette but no light pipe."); id. at 18-20 (referring generally to AccuPaks without distinguishing between versions); Synergetics Opp'n. to Mot. to Dismiss FAC 2 (". . . an AccuPak, which contains an Alcon cassette, but no light pipe").

The February Opinion established that a tying arrangement may result if "the individual products are priced such that the buyer is coerced to accept both products in a discounted package," Synergetics, 2009 WL 435299, at *3; and it noted that Synergetics did not provide "a price for the AccuPak, which contains a cassette and no light pipe." Id. at *4.  Because Synergetics failed to plead the price for an Accupak, the February Opinion determined that "Synergetics's pleading does not plausibly suggest the validity of its claim that it is prohibitively expensive to buy the cassette and light pipe separately." Id.

4

In its second amended complaint ("SAC"), Synergetics repeats its price coercion theory. It alleges that Alcon's Total Plus Pack includes a cassette, light pipe, vitrectomy probe, infusion cannula, scleral plugs, stopcock, syringe, IV administration set, sterile drape, tubing, and occasionally an MVR blade, and it costs $500. It also alleges Alcon's "small parts" kit, which includes an infusion cannula and scleral plugs, costs $110; an AccuPak that includes a cassette, tubing, and a probe costs $400;[1] and an Alcon light pipe costs $112. On the basis of these allegations, Synergetics argues that buying a small parts kit ($110), AccuPak ($400), and light pipe ($112) for a total of $622 is prohibitively expensive when compared to purchasing all of these products bundled in a $500 Total Plus Pack.

---

[1] The SAC suggests that some AccuPaks contain light pipes, and implies that the AccuPak for which Synergetics pleads a $400 price is one of those. SAC ¶ 77 ("[T]he term AccuPak® does not, in and of itself, indicate a surgical pack that does not contain a light pipe."); id. ¶ 80 ("[I]t is unknown how many of the AccuPak®s that Alcon has sold contained light pipes or what else was included in them."). With respect to the $400 AccuPak, the SAC says that a doctor who buys this product "still needs to purchase separately the infusion cannula, the scleral plugs, the stopcock, the syringe, the sterile drape, the IV administration set, and in some instances, the MVR blade." This allegation implies that a cassette, tubing, vitrectomy probe, and light pipe are included in the $400 AccuPak, since a doctor needs these items for vitreoretinal surgery but does not need to buy them separately if he purchases the $400 AccuPak. Nonetheless, this Opinion focuses on an alternative reading of the SAC wherein the $400 AccuPak does not include a light pipe.

The briefing related to Alcon's motion to dismiss the SAC distinguished between versions of AccuPaks.  Alcon noted that the SAC pleaded a price for an AccuPak that included a cassette, tubing, and vitrectomy probe, and did not plead a price for an AccuPak that included only a cassette and tubing, which Alcon referred to as "the cassette-only, no-vitrectomy probe model." Alcon argued that its 2009 price list, upon which Synergetics repeatedly relied, includes a "cassette-only AccuPak" for $192.

The June Opinion dismissed Synergetics's price coercion theory of tying because Synergetics failed to plead product prices that suggested the plausibility of this type of tying claim.  Specifically, the June Opinion noted that Synergetics "fail[ed] to plead the price of a cassette-only AccuPak." Synergetics, 2009 WL 1564113, at *2.

On June 18, 2009, Synergetics filed a motion for reconsideration of the dismissal of the price coercion theory of its tying claim.  This motion became fully submitted on July 13.

DISCUSSION

The standard for reconsideration is strict. "[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked -- matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Trans., Inc., 70 F.3d 255, 257 (2d Cir. 1995).

6

Reconsideration "should not be granted where the moving party seeks solely to relitigate an issue already decided," id., nor may the moving party "advance new facts, issues or arguments not previously presented to the Court." Shamis v. Ambassador Factors Corp., 187 F.R.D. 148, 151 (S.D.N.Y. 1999) (citation omitted).  The decision to grant or deny the motion is within the sound discretion of the district court.  See Devlin v. Transp. Commc'n Int'l Union, 175 F.3d 121, 132 (2d Cir. 1999).

Synergetics is not entitled to reconsideration of the dismissal of the price coercion branch of its tying claim. Synergetics argues that it cured the defects identified in the February Opinion.  The February Opinion dismissed the price coercion theory because Synergetics had not pleaded the price of an "AccuPak, which does not contain a light pipe."[2]  Even if one assumes that the SAC plead the price of an AccuPak that does not

---

[2] To the extent Synergetics suggests that the February Opinion misled it into believing that it could plead a viable price coercion claim without pleading the prices for the constituent parts of the Total Plus Pack, including the cassette bundled with as few other components as possible, that suggestion is rejected.  The February Opinion recited the legal standard requiring proof of the prices for the separate components of the "discounted package," and had no need to discuss an AccuPak with a probe, since as set forth above, the existence of a probe in some versions was not the focus of the parties' briefing. Having plead a tying claim premised on the cassette as the tying product, Synergetics could not plausibly believe it could survive a motion to dismiss its price coercion theory by pleading the price for a cassette bundled with a probe.

7

include a light pipe,[3] it still failed to plead the price of a cassette sold as a separate component.  This time Synergetics chose to provide the price of the cassette when sold with a probe, a price that is irrelevant to its effort to state a tying claim based on price coercion.  By not pleading the price of the product that allows a doctor to acquire a cassette with as few accessories and as inexpensively as possible (an AccuPak that includes only a cassette and tubing) or what Alcon referred to in its motion to dismiss the SAC as a "cassette-only AccuPak," Synergetics avoided the relevant comparison.

If Synergetics had pleaded the price for the "cassette-only AccuPak," then a comparison could be made between the cost of two methods of acquiring the instruments needed in vitreoretinal surgery: (1) purchasing the relevant AccuPak (one with only a cassette and tubing), a light pipe and all other necessary parts from Alcon, Synergetics, or another competitor separately; and (2) purchasing Alcon's $500 Total Plus Pack.  Based on this comparison, it could be determined if Synergetics has stated a plausible price coercion theory of tying.  As the February Opinion instructed: Synergetics must plead that "individual products are priced such that the buyer is coerced to accept both products in a discounted package."  Synergetics, 2009 WL 435299, at *3.  Even Synergetics's reply papers on this

---

[3] See supra note 1.

8

motion for reconsideration acknowledge that it must compare the Total Plus Pack "and the price of components purchased separately," but Synergetics chose not to do so.

In any event, the burden to plead a plausible tying claim is on the plaintiff.  That burden is not lifted or altered because the Court, in responding to the parties' specific arguments on a motion to dismiss, only addresses the arguments raised.  In granting a motion to dismiss, it is not the Court's burden to outline a pleading that would survive a motion to dismiss.  See Bellikoff v. Eaton Vance Corp., 481 F.3d 110, 118 (2d Cir. 2007) (plaintiffs "not entitled to an advisory opinion from the Court informing them of the deficiencies in the complaint and then an opportunity to cure those deficiencies"); accord Ritchie Capital Mgmt., L.L.C. v. Coventry First LLC, No. 07 Civ. 3494 (DLC), 2008 WL 542596, *2 (S.D.N.Y. Feb. 29, 2008).

Synergetics next argues that the price of the relevant AccuPak appears in Alcon's 2009 price list, which is incorporated by reference in the SAC.  This argument fails.  The SAC's limited quotation of product and price listings does not incorporate the entire list by reference.  Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004) ("Limited quotation from or reference to documents that may constitute relevant evidence in a case is not enough to incorporate those documents, wholesale, into the complaint.").  In any event, Synergetics's opposition to the

9

motion to dismiss the SAC did not ask the Court to consider this price list information.

Synergetics argues that Alcon's refusal-to-sell theory is intertwined with its price coercion theory, and Synergetics's price coercion theory therefore should not be dismissed because its refusal-to-sell theory survived Alcon's motion to dismiss the SAC.  This is a new argument not properly raised in a motion for reconsideration.  In any event, Synergetics does not show how its ability to develop its refusal-to-sell theory of tying will be harmed by the dismissal of its price coercion theory.

Without attaching a proposed amended pleading demonstrating that it could state a viable claim, Synergetics requests the opportunity to amend its pleading a third time.  "[I]t is within the sound discretion of the district court to grant or deny leave to amend."  McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007).  By an Order dated February 23, 2009, Synergetics was given "one final opportunity to amend."  Synergetics filed its SAC on March 6, 2009 and made a tactical decision not to plead prices for individual products.  It will not be given yet another opportunity to do so; its application for leave to amend is denied.

CONCLUSION

Alcon's June 18 motion for reconsideration and its application for leave to amend are denied.

SO ORDERED:

Dated: New York, New York
August 18, 2009

_____
DENISE COTE
United States District Judge